1
2
3
4
5
6
7
8            UNITED STATES DISTRICT COURT

9            CENTRAL DISTRICT OF CALIFORNIA

10                  EASTERN DIVISION

11

12   JESSE J. SPINNER,                )   No. ED CV 13-1267-PLA
                                      )
13                  Petitioner,       )
                                      )
14          v.                        )   MEMORANDUM DECISION AND ORDER
                                      )
15   C. WOFFORD, Warden,              )
                                      )
16                  Respondent.       )
                                      )
17   _____)

18                          I.

19               SUMMARY OF PROCEEDINGS

20          On June 6, 2011, in Riverside County Superior Court, petitioner pleaded guilty to one count

21   of forcible rape of Jane Doe 2 (Cal. Penal Code § 261(a)(2), count one); one count of aggravated

22   assault of Jane Doe 1 (Cal. Penal Code § 245(a)(1), count ten); and one count of false

23   imprisonment of Jane Doe 3 (Cal. Penal Code § 236, count eleven).[1]  (Clerk's Transcript ("CT")

24   141-44; Reporter's Transcript ("RT") 1-6).  On that same day, petitioner was sentenced to an

25

26          [1]     Petitioner was also charged with three other counts of forcible rape (Cal. Penal Code §
27   261(a)(2)); one count of attempted forcible sodomy (Cal. Penal Code § 664, 286(c)(2)); one count of
     false imprisonment (Cal. Penal Code § 236); one count of forcible oral copulation (Cal. Penal Code §
28   288(c)(2)); and two counts of forcible sodomy (Cal. Penal Code § 286(c)(2)).  (Lodgment No. 10 at 3).

1  agreed term of four years in state prison, and the remaining eight counts against him were
2  dismissed and stricken pursuant to the plea agreement. (RT 1, 5-6). On July 13, 2011, petitioner
3  filed a notice of appeal in the superior court "based on the sentence or other matters occurring
4  after the plea." (CT 145). On July 27, 2011, petitioner filed another notice of appeal in the
5  superior court, challenging the validity of the plea. (CT 146). He also requested a certificate of
6  probable cause under California Penal Code section 1237.5. (CT 147). On July 28, 2011, the
7  superior court denied the request. (Id.). Petitioner then filed a "Petition for Mandate" in the
8  California Court of Appeal (Lodgment No. 4), which the court of appeal denied on November 15,
9  2011. (Lodgment No. 5). On January 26, 2012, the court of appeal affirmed petitioner's
10  convictions. (Lodgment No. 10). There is no record of petitioner filing a petition for review in the
11  California Supreme Court.[2]

12       On March 21, 2013, petitioner constructively filed a habeas petition in the Riverside County
13  Superior Court, which was denied on March 27, 2013, on the ground that the petition "fails to state
14  a prima facie factual case supporting the petitioner's release [and] . . . makes assertions regarding
15  the applicable law that are contrary to established California case decisions." (Lodgment Nos. 11,
16  12). On March 25, 2013, petitioner constructively filed a petition for writ of habeas corpus in the
17  California Supreme Court, which was summarily denied on June 12, 2013. (Lodgment Nos. 13,
18  14).

19       On July 9, 2013, in the Eastern District of California, petitioner filed a Petition for Writ of
20  Habeas Corpus by a Person in State Custody. (Dkt. No. 1). On July 16, 2013, the case was
21  transferred to this District. (Dkt. No. 3). On September 24, 2013, petitioner filed a First Amended
22  Petition, the operative pleading in this action. (Dkt. No. 21). On November 14, 2013, respondent
23  filed an Answer to the FAP. (Dkt. No. 26). On January 6, 2014, petitioner filed a Traverse. (Dkt.
24  No. 29).

25

26       [2]  Although petitioner indicates in his First Amended Petition ("FAP") that he filed a petition
27  for review in the California Supreme Court in case number S209721 (FAP at 4), the petition he
      filed with that case number in that court was actually a petition for writ of habeas corpus. (See
28  Lodgment Nos. 13, 14).

Accordingly, this matter has been taken under submission, and is ready for decision.[3]

## II.

## STATEMENT OF RELEVANT FACTS

The Court adopts the following factual summary set forth in the California Court of Appeal's opinion affirming petitioner's conviction:[4]

> Jane Doe 3 and [petitioner] met in January 2004, and were in a relationship for about 18 months. During that time period, they had a child together, and would have consensual sex. However, about five to 10 times, between March 2004 and October 2005, [petitioner] assaulted and forcibly raped and sodomized Jane Doe 3.
>
> On October 13, 2006, [petitioner] picked up Jane Doe 2 from her residence in Los Angeles. Upon [petitioner]'s request, Jane Doe 2 agreed to spend the night at [petitioner]'s house. [Petitioner] requested that Jane Doe 2 stay in his bedroom to watch television together and talk for a while before she slept in the guest bedroom. Jane Doe 2 agreed, and lay on the bed next to [petitioner]. [Petitioner] thereafter repeatedly raped, assaulted, and sodomized Jane Doe 2. He also repeatedly forced her to orally copulate him, and prevented her from leaving his residence. Jane Doe 2 eventually text messaged her friend that she had been raped. When police arrived at [petitioner]'s residence, on October 14, 2006, Jane Doe 2 opened the front door and ran out of the residence completely naked.
>
> [Petitioner] attacked Jane Doe 1 on May 28, 2009. In that instance, [petitioner] raped and prevented Jane Doe 1 from leaving his residence. He also attempted to have Jane Doe 1 orally copulate him.

(Lodgment No. 10 at 2-3).

/

/

---

[3]   On August 19, 2013, petitioner consented to have the undersigned Magistrate Judge conduct all further proceedings in this matter, and on November 15, 2013, respondent filed a consent to the Magistrate Judge. (Dkt. Nos. 14, 28).

[4]   The Court "presume[s] that the state court's findings of fact are correct unless [p]etitioner rebuts that presumption with clear and convincing evidence." Tilcock v. Budge, 538 F.3d 1138, 1141 (9th Cir. 2008) (citations omitted); 28 U.S.C. § 2254(e)(1). Because petitioner has not rebutted the presumption with respect to the underlying events, the Court relies on the state court's recitation of the facts. Tilcock, 538 F.3d at 1141. To the extent that an evaluation of petitioner's individual claims depends on an examination of the trial record, the Court herein has made an independent evaluation of the record specific to those claims.

### III.

### PETITIONER'S CONTENTIONS

1.      **GROUND ONE:**  Ineffective assistance of trial counsel on the grounds that counsel: (a) failed to conduct a reasonable pre-trial investigation; (b) failed to move to exclude the alleged victims as unreliable; (c) failed to call upon petitioner's retained expert witness to support such a motion to exclude; (d) failed to seek relief from prejudicial joinder of the victims; (e) failed to impeach or attack the credibility of the victims; (f) did not expound upon petitioner's "esteemed background" that would convey the "motives of the alleged victims to extort financial gain and renumeration [sic]" from petitioner; (g) never requested certain discovery; (h) never objected to the prosecution's efforts to taint petitioner's character; (i) ignored the request of expert witness, Larry Smith, "to present exculpatory evidence and discovery, in addition to forensic video footage which would have revealed character evidence that could have led to an acquittal"; (j) did not put on a vigorous defense; and (k) otherwise failed to investigate and prepare for trial.  (FAP at 6, 11-20).[5]

2.      **GROUND TWO:**  Petitioner's plea was not voluntary because it was "unlawfully induced or not made voluntarily with understanding of the nature of the charge and the consequences of the plea."  (FAP at 6).  Petitioner states that he was convicted "on the basis of an amended information that alleged charges under Penal Code section 245(a)(1) that were not alleged in the criminal Complaint, or supported by evidence taken at a preliminary hearing."  (FAP at 84-88).  He asserts that although he may have agreed to waive the right to the preliminary hearing on the two newly added charges (counts ten and eleven), he did not "waive his right 'to proof beyond a reasonable doubt' as to every fact that went to his punishment."  (FAP at 85).

3.      **GROUND THREE:**  Ineffective assistance of trial counsel on the grounds that counsel:  (a) failed to object to the prosecution's use of petitioner's son's mother as the prosecution's only alleged victim, with no other evidence to support her claims; (b) failed to

---

[5]      For ease of reference, the Court will use the ECF-generated page numbers when referring to the FAP and its exhibits.

introduce evidence from the victim's psychological evaluation showing that the results revealed the alleged victim "scored lower on the administered trauma test in comparison to someone who has never experienced trauma"; (c) failed to "make the defendant's revered reputation [sic] throughout the community"; and (d) failed to object that there was no evidence to establish any offenses committed between June 2004 and October 2005.  (FAP at 5, 6; Traverse at 6).

4.      **GROUND FOUR:**  Ineffective assistance of appellate counsel for failing to raise all arguable issues on appeal.  (FAP at 7).

## IV.

## STANDARD OF REVIEW

The Petition was filed after the enactment of the Antiterrorism and Effective Death Penalty Act of 1996 ("the AEDPA").  Pub. L. No. 104-132, 110 Stat. 1214 (1996).  Therefore, the Court applies the AEDPA in its review of this action.  See Lindh v. Murphy, 521 U.S. 320, 336, 117 S. Ct. 2059, 138 L. Ed. 2d 481 (1997).

Under the AEDPA, a federal court may not grant a writ of habeas corpus on behalf of a person in state custody "with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  As explained by the Supreme Court, section 2254(d)(1) "places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court."  Williams v. Taylor, 529 U.S. 362, 412, 120 S. Ct. 1495, 146 L. Ed. 2d 389  (2000).  In Williams, the Court held that:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct

1       governing legal principle from this Court's decisions but unreasonably applies that

2 principle to the facts of the prisoner's case.

3 Williams, 529 U.S. at 412-13; see Weighall v. Middle, 215 F.3d 1058, 1061-62 (9th Cir. 2000)

4 (discussing Williams).  A federal court making the "unreasonable application" inquiry asks "whether

5 the state court's application of clearly established federal law was objectively unreasonable."

6 Williams, 529 U.S. at 409; Weighall, 215 F.3d at 1062.  The Williams Court explained that "a

7 federal habeas court may not issue the writ simply because that court concludes in its independent

8 judgment that the relevant state-court decision applied clearly established federal law erroneously

9 or incorrectly.  Rather, that application must also be unreasonable."  Williams, 529 U.S. at 411;

10 accord Lockyer v. Andrade, 538 U.S. 63, 123 S. Ct. 1166, 1175, 155 L. Ed. 2d 144 (2003).

11 Section 2254(d)(1) imposes a "highly deferential standard for evaluating state-court rulings," Lindh,

12 521 U.S. at 333 n.7, and "demands that state court decisions be given the benefit of the doubt."

13 Woodford v. Visciotti, 537 U.S. 19, 123 S. Ct. 357, 360, 154 L. Ed. 2d 279 (2002) (per curiam).

14 A federal court may not "substitut[e] its own judgment for that of the state court, in contravention

15 of  28 U.S.C. § 2254(d)."  Id.; Early v. Packer, 537 U.S. 3, 123 S. Ct. 362, 366, 154 L. Ed. 2d 263

16 (2002) (per curiam) (holding that habeas relief is not proper where state court decision was only

17 "merely erroneous").

18       The only definitive source of clearly established federal law under the AEDPA is the

19 holdings (as opposed to the dicta) of the Supreme Court as of the time of the state court decision.

20 Williams, 529 U.S. at 412.  While circuit law may be "persuasive authority" for purposes of

21 determining whether a state court decision is an unreasonable application of Supreme Court law

22 (Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir. 1999)), only the Supreme Court's holdings

23 are binding on the state courts and only those holdings need be reasonably applied.  Williams, 529

24 U.S. at 412; Moses v. Payne, 555 F.3d 742, 759 (9th Cir. 2009).  Furthermore, under 28 U.S.C.

25 § 2254(e)(1), factual determinations by a state court "shall be presumed to be correct" unless the

26 petitioner rebuts the presumption "by clear and convincing evidence."

27       A federal habeas court conducting an analysis under § 2254(d) "must determine what

28 arguments or theories supported, or, [in the case of an unexplained denial on the merits], could

1    have supported, the state court's decision; and then it must ask whether it is possible fairminded

2    jurists could disagree that those arguments or theories are inconsistent with the holding in a prior

3    decision of [the Supreme Court]."  Harrington v. Richter, 562 U.S. 86, 131 S. Ct. 770, 786, 178 L.

4    Ed. 2d 624 (2011) ("A state court's determination that a claim lacks merit precludes federal habeas

5    relief so long as 'fairminded jurists could disagree' on the correctness of the state court's

6    decision.").  In other words, to obtain habeas relief from a federal court, "a state prisoner must

7    show that the state court's ruling on the claim being presented in federal court was so lacking in

8    justification that there was an error well understood and comprehended in existing law beyond any

9    possibility for fairminded disagreement."  Id. at 786-87.

10        To determine petitioner's claims, the Court reviews the last reasoned state court decision

11   on the merits.  Crittenden v. Ayers, 624 F.3d 943, 950 (9th Cir. 2010) (citing Ylst v. Nunnemaker,

12   501 U.S. 797, 803, 111 S. Ct. 2590, 115 L. Ed. 2d 706 (1991)).  "Where there has been one

13   reasoned state judgment rejecting a federal claim, later unexplained orders upholding that

14   judgment or rejecting the same claim rest upon the same ground."  Ylst, 501 U.S. at 803.  Here,

15   petitioner presented his claims to the Riverside County Superior Court in a petition for writ of

16   habeas corpus, which the court denied on the merits.  See Phelps v. Alameida, 569 F.3d 1120,

17   1126 n.8 (9th Cir. 2009) (rejection of claim for failure to state a prima facie case constitutes denial

18   on the merits of the claim) (citing In re Clark, 5 Cal. 4th 750, 769 n.9 (1993)).  Petitioner then filed

19   a petition for writ of habeas corpus in the California Supreme Court, which issued a summary

20   denial on June 12, 2013. (Lodgment Nos. 13, 14).  Accordingly, this Court reviews the superior

21   court's decision under the AEDPA standard.  See Ylst, 501 U.S. at 803; Shackleford v. Hubbard,

22   234 F.3d 1072, 1079 n.2 (9th Cir. 2000) (district court "look[s] through" unexplained California

23   Supreme Court decision to the last reasoned decision as the basis for the state court's judgment).

24   /

25   /

26   /

27   /

28   /

# V.

## DISCUSSION

**GROUNDS ONE AND THREE**

### A.     Background

In Grounds One and Three, petitioner asserts that counsel rendered ineffective assistance.

In Ground One, petitioner contends that his counsel failed to call upon witnesses favorable to petitioner, and had an unexplained conflict of interest with the prosecution.  (FAP at 6).  Specifically, petitioner contends that counsel had retained an expert witness, Larry Smith, an expert on sexual assault, and Dr. Suiter, who did "an extensive 730 Evaluation on the Petitioner" and one of the victims.  (Traverse at 6, 11).  He argues that "an extensive psychological evaluation, expert witness reports, declarations, medical reports and examinations, no criminal history, [and] . . . the petitioner's character traits," do not "fit the mode [sic] of someone who would commit such a heinous crime."  (Traverse at 8).  In contrast, the "character traits of the alleged victims all were questionable and reflected patterns of dishonesty in addition to having legal merit."  (Id.).

In Ground Three, petitioner contends that counsel rendered ineffective assistance because counsel failed to object to the prosecution's use of petitioner's son's mother as the prosecution's only alleged victim, with no other evidence to support her claims; failed to introduce evidence from the victim's psychological evaluation showing that the results revealed the alleged victim "scored lower on the administered trauma test in comparison to someone who has never experienced trauma"; and failed to make known petitioner's "revered reputation throughout the community."  (FAP at 6-7).

Plaintiff also generally contends that counsel failed to file any pre-trial motions, such as a motion to suppress evidence, or a 995 hearing to exclude non-credible witnesses, or a motion to sever the case against him relating to the mother of his son, as the prosecution's evidence consisted "of three individuals with no DNA, medical reports, or police reports that matched the allegations."  (Traverse at 11).

1  Petitioner argues that counsel's ineffective assistance "increas[ed] the prosecution['s]

2  chances of a conviction," and "a competent attorney would have succeeded by filing the

3  aforementioned pre-tr[ia]l motions as opposed to allowing prejudice to form against the petitioner."

4  (Id.).

5

6  **B.   Analysis**

7  Preliminarily, to the extent that petitioner is also claiming in Grounds One and Three that

8  his guilty plea was involuntary or unknowing, such a claim is duplicative of the claim raised in

9  Ground Two, which is addressed below.

10  Second, to the extent that petitioner's ineffective assistance of counsel claims purport to

11  attack pre-plea constitutional errors, petitioner is barred from raising these claims pursuant to

12  Tollett v. Henderson, 411 U.S. 258,  266-67, 93 S. Ct. 1602, 36 L. Ed. 2d 235 (1973).  As stated

13  by the United States Supreme Court:

14      [A] guilty plea represents a break in the chain of events which has preceded it in the
    criminal process.  When a criminal defendant has solemnly admitted in open court

15      that he is in fact guilty of the offense with which he is charged, he may not thereafter
    raise independent claims relating to the deprivation of constitutional rights that

16      occurred prior to the entry of the guilty plea.  He may only attack the voluntary and
    intelligent character of the guilty plea[.]

17

18  Tollett, 411 U.S. at 267.  In the context of a plea, hindsight and second-guesses are often even

19  more inappropriate, especially "where a plea has been entered without a full trial or . . . even

20  before the prosecution decided on the charges."  Premo v. Moore, 562 U.S. 115, 131 S. Ct. 733,

21  745-46, 178 L. Ed. 2d 649 (2011).  "The added uncertainty that results when there is no extended,

22  formal record and no actual history to show how the charges have played out at trial works against

23  the party alleging inadequate assistance."  Id. at 745.  Consequently, "[t]here is a most substantial

24  burden on the claimant to show ineffective assistance."  Id.

25  Here, as described above, petitioner's claims are based on counsel's failure to call

26  favorable witnesses to contest the evidence against him, to file various motions, to argue his good

27  character and the victims' bad character, and to object to the "prosecution's use of [his] son's

28  mother," among other things.  These claims do not bear on the validity of petitioner's guilty plea

1    and are the sorts of claims that are barred by Tollett.  See Helm v. Van Boening, 2010 WL

2    417420, at *15 (W.D. Wash. Jan. 29, 2010) (finding petitioner's "allegations of pre-plea ineffective

3    assistance, including his claims that counsel failed to investigate and prepare a defense, are

4    barred by [petitioner's] guilty plea"); White v. Yates, 2008 WL 1836694, at *10 (C.D. Cal. Apr. 18,

5    2008) (finding petitioner's no contest plea foreclosed any claim of counsel's failure to investigate

6    his defense).

7          Although the Supreme Court has recognized exceptions to the Tollett rule, those exceptions

8    apply only to "claims in which, judged on the face of the indictment and record, the charge in

9    question is one which the state may not constitutionally prosecute."  United States v. Johnston,

10   199 F.3d 1015, 1019 n.3 (9th Cir. 1999); see also Menna v. New York, 423 U.S. 61, 62, 96 S. Ct.

11   241, 46 L. Ed. 2d 195 (1975) (bar on collateral challenges to pre-plea errors did not preclude

12   defendant from asserting double jeopardy to indictment under which he pleaded guilty);

13   Blackledge v. Perry, 417 U.S. 21, 30-31, 94 S. Ct. 2098, 40 L. Ed. 2d 628 (1974) (guilty plea did

14   not foreclose claim that a defendant was vindictively prosecuted).  Here, none of petitioner's

15   allegations involves a jurisdictional challenge.  Thus, none of the exceptions to Tollett applies.

16          Furthermore, the Supreme Court's recent decisions in Lafler v. Cooper, __ U.S. __, 132 S.

17   Ct. 1376, 182 L. Ed. 2d 398 (2012), and Missouri v. Frye, __ U.S. __, 132 S. Ct. 1399, 182 L. Ed.

18   2d 379 (2012), do not alter the Court's analysis.  Those cases address instances where

19   "inadequate assistance of counsel caused nonacceptance of a plea offer and further proceedings

20   led to a less favorable outcome."  Lafler, 132 S. Ct. at 1383 (emphasis added).  Here, the

21   purported constitutional errors did not lead to the nonacceptance of a plea offer; on the contrary,

22   petitioner accepted the plea offer.  Moreover, none of the purported errors identified above

23   implicates the question of whether petitioner knowingly and voluntarily pleaded guilty.  Accordingly,

24   petitioner's ineffective assistance of counsel claims in Grounds One and Three are barred by

25   Tollett.

26          Moreover, even if petitioner's claims are not barred by Tollett, petitioner has not

27   demonstrated any prejudice as a result of counsel's alleged deficiencies sufficient to support a

28

claim of ineffective assistance of counsel under the <u>Strickland</u> standard.[6] (<u>See</u> Discussion <u>infra</u>, Ground Two, Part B).

Based on the foregoing, petitioner's ineffective assistance of counsel claims in Grounds One and Three do not attack the knowing, voluntary, or intelligent nature of his plea, but instead relate to pre-plea alleged constitutional deprivations. Petitioner's ineffective assistance of counsel claims, therefore, are barred by his subsequent guilty plea and no federal habeas relief is available.

**GROUND TWO**

**A.    Knowing and Voluntary Plea**

In Ground Two, petitioner contends his plea was not voluntary.

"The longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" <u>Hill v. Lockhart</u>, 474 U.S. 52, 56, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985) (quoting <u>North Carolina v. Alford</u>, 400 U.S. 25, 31, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970)); <u>see</u> <u>also</u> <u>Boykin v. Alabama</u>, 395 U.S. 238, 242, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969). "A plea of guilty is voluntary 'only if it is "entered by one fully aware of the *direct* consequences" of his plea.'" <u>Torrey v. Estelle</u>, 842 F.2d 234, 235 (9th Cir. 1988) (emphasis in original). A guilty plea obtained through coercion is involuntary. <u>See</u> <u>Brady v. United States</u>, 397 U.S. 742, 750, 90 S. Ct. 1463, 25 L. Ed. 2d 747 (1970). "The purpose of the 'knowing and voluntary' inquiry . . . is to determine whether the defendant actually *does* understand the significance and consequences of a particular decision and whether the decision is uncoerced." <u>Godinez v. Moran</u>, 509 U.S. 389, 401 n.12, 113 S. Ct. 2680, 125 L. Ed. 2d 321 (1993) (emphasis in original). The relevant inquiry is whether petitioner's guilty plea was voluntary and intelligent under the totality of the circumstances. <u>See</u> <u>Alford</u>, 400 U.S. at 31; <u>Brady</u>, 397 U.S. at 749. Further, "[a] habeas petitioner bears the burden of

---

[6]    <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

1    establishing that his guilty plea was not voluntary and knowing." Little v. Crawford, 449 F.3d 1075,

2    1080 (9th Cir. 2006).

3          A defendant's representations at a plea hearing, as well as any findings made by the judge

4    accepting the plea, constitute a "formidable barrier in any subsequent collateral proceedings."

5    Blackledge v. Allison, 431 U.S. 63, 73-74, 97 S. Ct. 1621, 52 L. Ed. 2d 136 (1977).  "Solemn

6    declarations in open court carry a strong presumption of verity."  Id.; see also Muth v. Fondren,

7    676 F.3d 815, 821 (9th Cir. 2012) ("Petitioner's statements at the plea colloquy carry a strong

8    presumption of truth.").

9          Petitioner contends that the factual basis for his plea -- the police report (see Confidential

10   Material Transcript) -- was invalid because the charges on which he was convicted were not

11   accurately reflected in that report, if at all.  (FAP at 6; Traverse at 2, 6, 8, 15).  Specifically, he cites

12   to the Petition for Mandate filed by appellate counsel, which discussed the fact that with respect

13   to newly added count ten as against Jane Doe 1, there was no reference as to whether the

14   aggravated assault was with a deadly weapon or by means of force likely to cause great bodily

15   injury, and there were no medical reports or other reports to support this claim; with respect to

16   count eleven, he claims the victim, Jane Doe 3, made no report of being falsely imprisoned by

17   petitioner; and in count one, Jane Doe 2 reported she was raped on October 14, 2006, not on May

18   29, 2009, as reflected in the criminal complaint as amended at the hearing.[7]  (FAP at 5; Traverse

19   at 2; see also CT 19-20).

20         Here, the record reflects that on June 6, 2011, petitioner appeared in Riverside County

21   Superior Court for a change of plea hearing and sentencing.  (RT 1-6).  After confirming that the

22   criminal complaint would be amended to add counts ten and eleven, the trial court confirmed that

23   petitioner would be pleading guilty to counts one, ten, and eleven, and that count one would be

24

25         [7]   In the amended information, count one alleged that petitioner committed a violation of
26   California Penal Code section 261(a)(2), rape, on or about May 29, 2009, against Jane Doe 1.
     (CT 19).  At the plea hearing, although count one was amended to reflect Jane Doe 2 as the
27   victim, the date was not changed to reflect that Jane Doe 2 alleged the rape had been committed
     in October 2006.  The Court notes that one of the dismissed counts, count five, alleged a violation
28   of Penal Code section 261(a)(2), on or about October 14, 2006, against Jane Doe 2.  (CT 2).

1   amended to reflect a different victim.  (RT 1).  The court stated that petitioner's total sentence was

2   going to be four years.  (Id.)  The court asked petitioner whether he had any questions about "any

3   of that," and petitioner replied, "No.  Go ahead."  (RT 2).  The court then asked petitioner whether

4   he had "go[ne] over the rights on the yellow [plea] form carefully" with defense counsel, and

5   whether he understood those rights; petitioner replied "Yes" to both questions.  (Id.).  Petitioner

6   also confirmed that he understood that by signing the plea form and pleading guilty he was giving

7   up the rights detailed on the form, and that he understood that the People would be dismissing the

8   other charges against him.  (Id.).  Asked again if he had any questions "about anything," petitioner

9   replied "No."  (Id.).  The court then went through each of the three counts, confirming that

10  petitioner understood the charge and had reviewed it with defense counsel, after which petitioner

11  pleaded guilty to each count.  (RT 2-3).  Petitioner not only acknowledged that he understood each

12  of the three charges to which he was pleading guilty and the potential sentencing ramifications

13  from changing his plea (RT 2-3), but in signing the plea form, he affirmatively denied that he was

14  being coerced or threatened into pleading guilty.  (CT 141).  The plea form itself, which petitioner

15  acknowledged he went over "carefully" with counsel (RT 2), also indicated that petitioner (1) had

16  adequate time to discuss with counsel his rights, the consequences of his plea, and any defenses

17  he might have to the charges; (2) would be pleading guilty to Penal Code section 261(a)(2) against

18  Jane Doe 2, section 245(a)(1) against Jane Doe 1, and section 236 against Jane Doe 3; and (3)

19  further admitted:  "Factual Basis:  I agree that I did the things that are stated in the charges that

20  I am admitting."  (CT 142, 143).  Petitioner stated on the record that he understood that the two

21  amended counts, ten and eleven, were both felonies and that he understood the charges on each.

22  (RT 3).  Based on petitioner's representations in open court, the court found that petitioner had

23  "knowingly and intelligently waived his rights, [and] he understands the charges against him and

24  the possible consequences of his plea."  (RT 4).  The court also confirmed that the parties

25  stipulated to the police report for the factual basis for petitioner's guilty plea.  (Id.; see also

26  Confidential Material Transcript 140-2 to -3, 140-5 to -7, 140-9 to -10).  Petitioner waived formal

27  arraignment and said he was ready for sentencing.  (RT 4).  After sentencing petitioner to the

28  bargained-for four year prison term, the court again asked whether petitioner had any questions,

13

1  to which he replied, "No, ma'am." (RT 5). Pursuant to the plea agreement, the court dismissed

2  the remaining counts and allegations. (RT 6).

3      Based on the record, petitioner's statements unequivocally demonstrate the intelligent and

4  voluntary nature of his plea. The trial court's factual determination that petitioner entered the plea

5  knowingly and voluntarily is entitled to deference. See 28 U.S.C. § 2254(e)(1). Nothing in the

6  record reflects the slightest hesitation on petitioner's part to enter the guilty plea. Nothing indicates

7  that petitioner did not understand the charges he was admitting to against each of the victims.

8  Rather, the record is clear that petitioner's plea was "entered by one fully aware of the direct

9  consequences.'" Torrey, 842 F.2d at 235. On this record, even if the police record does not

10 completely or accurately reflect the charges to which petitioner pleaded guilty, and even if the

11 amended information as amended at the change of plea hearing reflected an incorrect date

12 relating to count one (see supra note 7), the Court simply has no basis for finding that petitioner's

13 guilty plea did not "represent[] a voluntary and intelligent choice among the alternative courses of

14 action open to [him]." Hill, 474 U.S. at 56 (citation omitted). Additionally, as previously discussed,

15 one who voluntarily and intelligently pleads guilty to a criminal charge may not subsequently seek

16 federal habeas relief on the basis of pre-plea constitutional considerations. Tollett, 411 U.S. at

17 267. Accordingly, petitioner's guilty plea precludes any due process challenge to the factual basis

18 of his conviction. See also Fernandez v. Dep't of Corr., 2013 WL 1090419, at *4 (C.D. Cal. 2013)

19 (petitioner's no contest plea "precludes any due process challenge to the factual basis of her

20 conviction").

21

22      **B.    Ineffective Assistance of Counsel Relating to the Plea**

23      To the extent, if any, that petitioner is purporting to allege that he was coerced into entering

24 his plea (see FAP at 6; Traverse at 3, 10), or that trial counsel's advice caused him to enter a plea

25 of guilty and that the advice to enter the plea fell below "the range of competence demanded of

26 attorneys in criminal cases" (see FAP at 6), petitioner has failed to show either that counsel's

27 advice was objectively unreasonable, or that, but for his counsel's errors, there is a reasonable

28

1  probability that he would not have pleaded guilty and would instead have insisted on going to trial.

2  See Hill, 474 U.S. at 56-57, 59.

3       Claims of ineffective assistance are governed by Strickland v. Washington, 466 U.S. 668,

4  687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).  See Hill v. Lockhart, 474 U.S. 52, 58, 106 S. Ct.

5  366, 88 L. Ed. 2d 203 (1985) (holding that  Strickland applies to plea challenges based on

6  ineffective assistance of counsel).  The Strickland inquiry has two parts:  deficient performance

7  and prejudice.  Strickland, 466 U.S. at 687.  "In the context of a guilty plea, the ineffectiveness

8  inquiry probes whether the alleged ineffective assistance impinged on the defendant's ability to

9  enter an intelligent, knowing and voluntary plea of guilty.  To succeed, the defendant must show

10  that counsel's assistance was not within the range of competence demanded of counsel in criminal

11  cases and that the defendant suffered actual prejudice as a result. "  Lambert v. Blodgett, 393 F.3d

12  943, 979-80 (9th Cir. 2004).  The test for prejudice "focuses on whether counsel's constitutionally

13  ineffective performance affected the outcome of the plea process."  Hill, 474 U.S. at 59.  In other

14  words, petitioner must establish that "there is a reasonable probability that, but for counsel's

15  alleged errors, he would not have pleaded guilty and would have insisted on going to trial."  Id.

16       Here, petitioner fails to demonstrate that counsel's performance fell below the range of

17  competence demanded of attorneys in criminal cases.  Indeed, it appears that in preparing

18  petitioner's case, counsel arranged for psychological examinations of petitioner and one of the

19  victims, and also arranged for an expert witness on sexual assault.  (FAP at 5; Traverse at 6,11).

20  Counsel also extensively cross-examined the witnesses, including Jane Doe 3,  during petitioner's

21  preliminary hearing.  (RT 38-117).

22       Nor is there reason to believe that but for counsel's purported errors, petitioner would have

23  rejected the plea offer.  The criminal complaint as amended at the hearing charged petitioner with

24  four counts of forcible rape, one count of attempted forcible sodomy, two counts of false

25  imprisonment, one count of forcible oral copulation,[8] two counts of forcible sodomy, and one count

26

27  _____

28      [8]   However, at the preliminary hearing, the trial court found insufficient evidence to support
this count (count nine) and held petitioner to answer only on counts one through eight.  (CT 82-

of aggravated assault.  (Lodgment No. 10 at 3).  The complaint also alleged that petitioner had been convicted of committing rape against more than one victim.  (Id.; CT 19-21).  If convicted of all counts, petitioner "was facing in excess of twenty-four years in state prison."  (Answer at 13). Thus, petitioner received a substantial benefit from the plea agreement and he has not provided any evidence that he could have bargained with the prosecution for a sentence lighter than four years.  Nor is it reasonably probable he would have rejected the plea agreement had counsel, for instance, objected to the prosecution's "use" of petitioner's son's mother (Jane Doe 3) as the prosecution's only victim at the preliminary hearing,[9] which, as noted by respondent, was a choice not within defense counsel's control.  (Answer at 14).  Nor is there any evidence that even if counsel had objected, or conducted additional investigation, or called witnesses at the preliminary hearing, or made a motion regarding the unreliability or lack of credibility of the victims, that petitioner would have gone to trial rather than accept the plea agreement.  "A defendant is not entitled to withdraw his plea merely because he discovers . . . after the plea has been accepted that his calculus misapprehended the quality of the State's case or the likely penalties attached to alternative courses of action."  Brady, 379 U.S. at 757 (internal citations omitted).  For these reasons, even assuming counsel's performance was deficient, petitioner has failed to show that, but for counsel's alleged incompetent advice, petitioner would have ultimately rejected the plea offer and gone to trial.  See Hill, 474 U.S. at 59-60 (no prejudice in cases where, assuming defendant had not taken advice to plead guilty, the likelihood remains low that the trial and/or sentencing outcome would have changed); United States v. Baramdyka, 95 F.3d 840, 845-47 (9th Cir. 1996) (defendant suffered no prejudice from accepting plea agreement when, inter alia, "counsel succeeded in substantially reducing the sentence that [the defendant] would have likely received had he gone to trial.").

_____

(...continued)
84).

   [9]    The Court assumes petitioner is referring to the prosecution calling Jane Doe 3 as a witness at the preliminary hearing, as there were no other proceedings at which counsel would have had an opportunity to object to Jane Doe 3 as a witness.  (See CT  4-50).

1    Habeas relief is not warranted on Ground Two.

2

3    **GROUND FOUR**

4     **A.**  **Background**

5      In Ground Four, petitioner contends that appellate counsel was ineffective for failing to raise

6    all arguable issues on appeal.  (FAP at 7.)  He argues that appellate counsel failed to convey to

7    the appellate court petitioner's reputation in the community as a "former professional basketball

8    player, educator for 18 years in juvenile court schools, and a successful businessman," and also

9    failed to challenge the "non-credible extortionist[s] who conspired against" him.  (Id.).

10     By way of background, the court of appeal appointed counsel to represent petitioner on

11   appeal, and appellate counsel filed a brief pursuant to People v. Wende, 25 Cal. 3d 436, 158

12   (1979), and Anders v. California, 386 U.S. 738, 87 S. Ct. 1396, 18 L. Ed. 2d 493 (1967).

13   (Lodgment No. 6).  The Wende brief set forth a statement of the case, a summary of the facts and

14   potential arguable issues, including sentencing issues, ineffective assistance of counsel, and

15   whether the trial court properly found a factual basis for the pleas.  (Lodgment No. 6 at 8-11).

16   Appellate counsel requested that the court of appeal undertake an independent review of the

17   entire record.  (Lodgment No. 6 at 7).  The court of appeal also permitted petitioner to file his own

18   supplemental briefing.[10]  (Lodgment Nos. 7, 8, 9).  The court of appeal found that all of petitioner's

19   issues "concern the determination of guilt or innocence or are not reviewable" under California law.

20   (Lodgment No. 10 at 5).  The court found no basis for a certificate of probable cause, and declined

21   to consider the validity of the plea; whether the change of plea was knowing, intelligent, or

22   voluntary; or whether petitioner was deprived of effective assistance of counsel.  (Lodgment No.

23   10 at 5-6).

24   _____

25    [10]   Petitioner raised claims and allegations that (1) the victims were incredible; (2) retained

26   counsel was ineffective for failing to investigate the case to uncover exculpatory evidence and file
     a section 995 motion; (3) he was unaware of his constitutional rights and did not have an

27   opportunity to review the amended charges; (4) the trial court allowed excessive continuances and
     failed to reduce his $1,000,000.00 bail; (5) and he was coerced into pleading guilty.  (Lodgment

28   No. 10 at 4-5).

**B.    Procedural Bar**

Respondent contends that this claim is procedurally barred based on petitioner's failure to obtain a certificate of probable cause to challenge his conviction on appeal.  (Answer at 15-16).

In the interest of judicial economy, the Court will reach the merits of this claim. See Lambrix v. Singletary, 520 U.S. 518, 524-35, 117 S. Ct. 1517, 137 L. Ed. 2d 771 (1997); Barrett v. Acevedo, 169 F.3d 1155, 1162 (8th Cir.1999) ("judicial economy sometimes dictates reaching the merits if the merits are easily resolvable against a petitioner while the procedural bar issues are complicated").

**C.    Analysis**

Claims alleging ineffective assistance of appellate counsel are also reviewed according to the two-part test set forth in Strickland. See Morrison v. Estelle, 981 F.2d 425, 427 (9th Cir. 1992) (finding the standard for assessing the performance of trial and appellate counsel is essentially the same under Strickland); Miller v. Keeney, 882 F.2d 1428, 1433 (9th Cir. 1989).  First, to establish deficient performance, "petitioner must show that counsel's performance was objectively unreasonable, which in the appellate context requires the petitioner to demonstrate that counsel acted unreasonably in failing to discover and brief a merit-worthy issue." Moormann v. Ryan, 628 F.3d 1102, 1106 (9th Cir. 2010).  Prejudice "means that the petitioner must demonstrate a reasonable probability that, but for appellate counsel's failure to raise the issue, the petitioner would have prevailed in his appeal." Id.  To defeat an ineffective assistance claim, it is not required that appellate counsel raise every colorable or non-frivolous claim, as effective appellate advocacy involves weeding out weaker claims in order to focus on stronger ones.  Jones v. Barnes, 463 U.S. 745, 751-54, 103 S. Ct. 3308, 77 L. Ed. 2d 987 (1983); Miller, 882 F.2d at 1434.

Here, the arguments appellate counsel was able to present on appeal were limited by petitioner's guilty plea.  In state court, "a defendant may appeal from a conviction on a plea of guilty or no contest only on grounds going to the legality of the proceedings; such a plea precludes appellate consideration of issues related to guilt or innocence. . . ." People v. Palmer, 58 Cal. 4th

18

110, 114 (2013). Thus, to the extent petitioner would have had appellate counsel raise any claims related to his guilt or innocence, those claims could not have been presented following his guilty plea; indeed, the court of appeal stated as much.  (Lodgment No. 10 at 5-6).  Thus, appellate counsel could not have been ineffective for failing to raise those claims.  Wildman v. Johnson, 261 F.3d 832, 840-42 (9th Cir. 2001) (appellate counsel's failure to raise issues on direct appeal does not constitute ineffective assistance of counsel when claim would not have provided grounds for reversal); Miller, 882 F.2d at 1434 (appellate counsel is not deficient for failing to raise a weak issue).

Additionally, as discussed above, petitioner's claims of ineffective assistance of counsel and that his plea was not knowing and voluntary lack merit to the extent they invoke federal law. Appellate counsel is not ineffective for failing to present meritless claims.  Wildman, 261 F.3d at 840-42; Miller, 882 F.2d at 1434.

Habeas relief is not warranted on this claim.


**REQUEST FOR AN EVIDENTIARY HEARING**

Petitioner contends that in order to prove his "factual innocence of the alleged convictions," he is entitled to an evidentiary hearing to "introduce exculpatory evidence that was available, but never introduced," including psychological evaluations, expert witness reports, medical reports, and declarations.  (Traverse at 6, 8, 15).  As the Supreme Court held in Cullen v. Pinholster, __ U.S. __, 131 S. Ct. 1388, 1398, 179 L. Ed. 2d 557 (2011), review of state court decisions under § 2254(d)(1) "is limited to the record that was before the state court that adjudicated the claim on the merits."  Accordingly, to the extent that the Court has found that petitioner is not entitled to habeas relief under 28 U.S.C. § 2254(d)(1), this finding is dispositive of petitioner's request for an evidentiary hearing.

**CERTIFICATE OF APPEALABILITY**

Under Rule 11(a) of the Rules Governing § 2254 Cases, a court must grant or deny a certificate of appealability ("COA") when it denies a state habeas petition.  <u>See also</u> 28 U.S.C. § 2253(c).

A petitioner may not appeal a final order in a federal habeas corpus proceeding without first obtaining a COA.  <u>See</u> 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).  A COA may issue "only if . . . [there is] a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  A "substantial showing . . . includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'"  <u>Slack v. McDaniel</u>, 529 U.S. 473, 484, 120 S. Ct. 1595, 146 L. Ed. 2d 542 (2000) (citation omitted); <u>see also</u> <u>Sassounian v. Roe</u>, 230 F.3d 1097, 1101 (9th Cir. 2000).  Thus, "[w]here a district court has rejected the constitutional claims on the merits, . . . [t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  <u>Slack</u>, 529 U.S. at 484.

The Court concludes that, for the reasons set forth above, jurists of reason would not find the Court's assessment of petitioner's claims debatable or wrong.  Accordingly, a certificate of appealability is **denied**.  Petitioner is advised that he may not appeal the denial of a COA, but he may ask the Ninth Circuit Court of Appeals to issue a COA under Rule 22 of the Federal Rules of Appellate Procedure.  <u>See</u> Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Court.

/

/

/

/

/

/

## VI.

## <u>ORDER</u>

For the foregoing reasons, IT IS HEREBY ORDERED that Judgment is entered denying petitioner's request for an evidentiary hearing and denying and dismissing the First Amended Petition with prejudice.  A certificate of appealability is also denied.

DATED:  February 17, 2015

_____
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE